IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>THOMAS FAIRBANKS,<br><br>　　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING UNITED STATES'S MOTION IN LIMINE AND GRANTING IN PART AND DENYING IN PART FAIRBANKS'S MOTION IN LIMINE**<br><br>Case No. 1:19-cr-00114-JNP<br><br>District Judge Jill N. Parrish |

　　　　Defendant Thomas Fairbanks was charged with two counts of securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x, two counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of money laundering in violation of 18 U.S.C. § 1957. Fairbanks's trial on these charges is currently scheduled to begin on August 26, 2022. Before the court are motions in limine filed by the United States (ECF No. 61) and Fairbanks (ECF Nos. 72, 78). Oral argument on the motions was held on August 17, 2022. For the reasons presented herein, the court GRANTS the United States's motion and GRANTS IN PART and DENIES IN PART Fairbanks's motions.

**UNITED STATES'S MOTION IN LIMINE (ECF NO. 61)**

**I.　　Investment Contract Between Fairbanks and Byrna Dustin**

　　　　The United States seeks a pretrial ruling regarding the admissibility of "the investment contract between Mr. Fairbanks and Byrna Dustin." ECF No. 61 at 3. The United States argues that the investment contract is admissible, even though Dustin will not be testifying, because it "is highly relevant to prove that Fairbanks was engaged in a scheme and artifice to defraud" and "the investment contract itself is a verbal act, not hearsay." *Id.* at 4. The United States further contends

1

that Dustin's absence is not problematic "as Mr. Fairbanks'[s] own statements to Ms. Blaylock"—the witness through whom the United States intends to introduce the evidence—"lay the proper foundation for admissibility." *Id.* The court agrees.

Fairbanks is charged, in part, with securities fraud in violation of 15 U.S.C. §§ 77q(a) and 77x. ECF No. 1. "Three basic elements comprise the offense: (1) fraud by any of the means identified in subsections (a)(1)-(3), (2) using any means or instruments of interstate commerce or the mails, and (3) occurring in the offer or sale of a security." *United States v. Harris*, 919 F. Supp. 2d 702, 705 (E.D. Va. 2013). One of the means identified in § 77q(a)(1)-(3) is "to employ any device, scheme, or artifice to defraud." 15 U.S.C. § 77q(a)(1). "A 'device' is simply that which is devised, or formed by design; a 'scheme' is a project, plan, or program of something to be done; and an 'artifice' is an artful stratagem or trick." *Malouf v. SEC*, 933 F.3d 1248, 1260 (10th Cir. 2019) (cleaned up). Here, the court agrees with the United States that the investment contract that Fairbanks allegedly entered into with Dustin is relevant to prove that Fairbanks was engaged in a scheme to defraud. Specifically, the court has reviewed the United States's proposed exhibits and the contract that Fairbanks entered into with Dustin is virtually identical to the investment contract that Fairbanks entered into with the Holloways. In addition, both contracts were executed within a little over a year of each other. Thus, the Dustin investment contract supports the United States's allegation that Fairbanks employed a plan to defraud. Because evidence of a plan—or scheme—to defraud would establish an essential element of one or more charged offenses, such evidence is relevant. *See* FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

Moreover, the court agrees with the United States that the existence of the contract, as well as the fact that certain statements were made in the contract, is not hearsay. "Hearsay is a statement that is offered 'to prove the truth of the matter asserted' and is generally inadmissible. Contracts and all writings with independent legal significance are verbal acts rather than assertions. The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection." *Castaneda v. Volt Mgmt. Corp.*, No. EP-19-CV-00338-FM, 2020 U.S. Dist. LEXIS 81735, at *6 (W.D. Tex. May 8, 2020) (quoting FED. R. EVID. 801(c)); *see also Cagle v. James St. Grp.*, 400 F. App'x 348, 356 (10th Cir. 2010) (unpublished) ("First, the contract was not excludable as hearsay. It constituted an act of legal significance between Norris and her attorneys, not a 'statement' offered for its truth."). Likewise, "if the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." *Echo Acceptance Corp. v. Household Retail Servs.*, 267 F.3d 1068, 1087 (10th Cir. 2001) (citation omitted). Therefore, the court concludes that the investment contract—at least for the purposes of its existence and the fact that certain statements within it were made—is not hearsay.

Furthermore, the court agrees that the investment contract can be introduced through Blaylock. Under Federal Rule of Evidence 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." One type of evidence that can support such a finding is "[t]estimony that an item is what it is claimed to be." FED. R. EVID. 901(b)(1). Here, Blaylock interviewed Fairbanks and, during the interview, presented Fairbanks with the investment contract. According to the United States, Fairbanks then stated, "This one, I'm not sure that this was fully executed. I'm surprised that you have a copy of it because we don't know where

3

these copies are." ECF No. 61 at 3. Fairbanks also indicated that he created the document. Therefore, if Blaylock testifies to these statements—which are not hearsay because they are statements from a party opponent, *see* FED. R. EVID. 801(d)(2)(A)—there will be sufficient evidence that the investment contract is actually the investment contract between Fairbanks and Dustin, and there will be evidence as to how Blaylock is able to identify it as such. *See Rowe v. Conoco, Inc.*, No. 97-6107, 1998 U.S. App. LEXIS 13196, at *19–20 (10th Cir. June 19, 1998) (unpublished) ("[B]efore a court can deem such testimony relevant, the proponent must first lay a foundation demonstrating how the lay witness came to be able to identify the substance in question.").

Therefore, the court concludes that the investment contract between Fairbanks and Dustin is admissible.

## II. Business Records Showing Financial Transactions Between Dustin and Fairbanks

The United States seeks a pretrial ruling regarding business records showing financial transactions between Dustin and Fairbanks. The United States contends that these records—which include cashier's checks and bank receipts of electronic transfers—"are still relevant to the scheme to defraud that Mr. Fairbanks engaged in," even if the United States moves to dismiss the representative counts related to those documents. ECF No. 61 at 5. Moreover, according to the United States, "[t]he documents meet the business records exception to hearsay under Federal Rule of Evidence 803(6)," "[t]hey are self-authenticating under Rule 902(11)[,] and the case agent Liz Blaylock intends to testify to these records and how they were obtained." *Id.*

First, the court agrees with the United States that, even if the United States dismisses the counts in which Dustin was the alleged victim, the business records showing financial transactions between Dustin and Fairbanks are still relevant. Specifically, the business records, when coupled

4

with Dustin's investment contract, support the United States's allegation that Fairbanks "operated Supply[L]ine as a fraud and deceit upon the purchaser" which, correspondingly, supports the United States's allegation that Fairbanks employed a project or plan to defraud the Holloways, who likewise invested in SupplyLine. Therefore, the business records would still be relevant.

Further, the records at issue appear to satisfy the business records exception to the rule against hearsay under Federal Rule of Evidence 803(6). Specifically, the United States has submitted declarations stating that the records were "made at or near the time by—or from information transmitted by—someone with knowledge"; were "kept in the course of a regularly conducted activity of a business"; and "making the record[s] was a regular practice of that activity." *See* ECF No. 64; FED. R. EVID. 803(6). Moreover, it appears that "all of these conditions [have been] shown by the testimony of the custodian or another qualified witness," and Fairbanks has not suggested that the records lack trustworthiness. *See* FED. R. EVID. 803(6). Therefore, the court agrees that the records are admissible pursuant to the business records exception, and that the records are self-authenticating pursuant to Federal Rule of Evidence 902(11) ("The following items of evidence are self-authenticating[:] . . . The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court.").

Thus, the court concludes that the business records showing financial transactions between Dustin and Fairbanks are admissible.

**FAIRBANKS'S MOTIONS IN LIMINE (ECF NOS. 72, 78)**

I.     **Hearsay**

Fairbanks requests a pretrial ruling that "preclude[s] the introduction of any hearsay evidence" at his trial. ECF No. 72 at 6. Specifically, Fairbanks contends that:

> Ruth Ann Holloway should not be allowed to testify about conversations her late husband had with Mr. Fairbanks or anyone else. Additionally, Ms. Holloway should not be allowed to testify about any matter, if she does not have first ha[n]d knowledge of the matter, or was not present when the matter was discussed or took place. Furthermore, the government's other witnesses should not be allowed to testify about conversations they had or things they learned from Jim Holloway or Byrna Dustin, and any proposed government exhibit that contains impermissible hearsay should also be kept from the jury."

*Id.*

The United States responds that it "does not intend to introduce hearsay into evidence nor admit evidence without a proper foundation by any witness." ECF No. 76 at 2. More specifically, the United States asserts that "Ms. Holloway will not testify about conversations her late husband had with Mr. Fairbanks when she was not present." *Id.*

Because the United States has agreed to not introduce impermissible hearsay or evidence without a proper foundation, Fairbanks's motion is largely moot. That said, the court emphasizes that it agrees with Fairbanks that Ms. Holloway may not testify about conversations Mr. Holloway had with Fairbanks or anyone else, unless the testimony satisfies an exception to the rule against hearsay. Similarly, the United States's other witnesses may not testify about conversations they had or things that they learned that constitute impermissible hearsay, and the United States may not present any exhibits that contain impermissible hearsay.[1] Ms. Holloway also may not testify about any matters about which she does not have firsthand knowledge. *See* FED. R. EVID. 602 ("A

---

[1] The United States has already removed from its exhibit list one exhibit that Fairbanks identified as problematic.

witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

Therefore, as specified here, the court grants Fairbanks's motion to exclude impermissible hearsay. If the United States attempts to introduce such hearsay at trial, Fairbanks may object and, if the testimony does not fall within an exception to the hearsay rule, the court will sustain the objection.

**II.      Bank Records**

Fairbanks moves to exclude bank records that suggest that money that went into Dustin's accounts was later transferred out of those accounts by Fairbanks. According to Fairbanks, testimony to that effect should be excluded because it "is of little probative value without the testimony of Ms. Dustin and her knowledge of and consent to those transactions." ECF No. 72 at 7. Moreover, Fairbanks asserts that "[t]he probative value of the records is extremely slight, and the risk of unfair prejudice is high because Mr. Fairbanks cannot cross-examine any government witness with first-hand knowledge of the financial transactions represented in the bank records." *Id.* at 7–8. Fairbanks further asserts that, "[i]f this Court were to allow the records to be introduced, it would deprive Mr. Fairbanks of the opportunity to cross-examine the witnesses against him." *Id.* at 8. Fairbanks also contends that there is a high risk of juror confusion if such records and testimony are admitted because while "Ms. Holloway will likely testify that Mr. Fairbanks made all sorts of excuses and material omissions to the Holloways regarding their anticipated return on investment, the government cannot prove any such excuses or material omissions with regard to Ms. Dustin." *Id.* Fairbanks contends that "[t]he jury must not be allowed to infer that Mr. Fairbanks

committed fraud upon Ms. Dustin in Counts 2-5 simply because Ms. Holloway testifies that he defrauded her in Count 1." *Id.* at 9.

The United States responds that, "[c]onsidering the charges alleged in this case, the records are highly relevant to the charged conduct. Nor are these bank records unfairly prejudicial." ECF No. 76 at 3. Specifically, according to the United States, "[e]ven if Ms. Dustin knew about these transactions and consented to them, that does not prevent the United States from proving that Mr. Fairbanks employed a scheme and artifice to defraud, made material misrepresentation in the Supply[L]ine Contract, nor does it stop the United States from presenting evidence that Mr. Fairbanks operated the business as a fraud and deceit upon the purchaser." *Id.* at 4.

As an initial matter, as addressed previously, the court agrees with the United States that the bank records are relevant to whether Fairbanks employed a scheme or artifice to defraud.[2] Moreover, the court is not convinced that the probative value of the records is substantially outweighed by the danger of unfair prejudice or juror confusion. "The danger of 'unfair prejudice' under Rule 403 is not simply the tendency of evidence to undermine a party's position. Rather, the prejudice that is 'unfair' is prejudice arising from the tendency of proffered evidence to suggest to the jury that it should render its findings 'on an improper basis, commonly, though not necessarily,

---

[2] The court notes that the bank records, when coupled with the investment contract that Fairbanks allegedly entered into with Dustin, may be highly probative of whether Fairbanks employed a scheme or artifice to defraud, even in the absence of Dustin's testimony. In fact, in the absence of Dustin's testimony, the bank records become even more essential to the United States's case that Fairbanks defrauded Dustin, thereby increasing their probative value. *See Gutierrez v. Galiano Enters. of Miami, Corp.*, No. 17-24081-Civ-TORRES, 2019 U.S. Dist. LEXIS 122005, at *4 (S.D. Fla. July 23, 2019) ("In the context of a Rule 403 balancing test, the more essential the piece of evidence is to a case, the higher its probative value; the higher a piece of evidence's probative value, the less likely it should be excluded on 403 grounds."). In addition, to the extent that the absence of Dustin's testimony leaves gaps in the evidence, this will provide great fodder for Fairbanks during his cross-examination of the witness through whom the bank records are introduced and during closing argument, as well as in a motion for a directed verdict.

an emotional one.'" *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998). Here, the court is not convinced that bank records or testimony regarding the transfer of money into and out of bank accounts is likely to inflame the jury, or cause the jury to render a verdict on an improper basis. In addition, to the extent that Fairbanks is asserting that an improper verdict could be rendered, it appears that he is asserting that *Ms. Holloway's testimony* could lead to an improper verdict on Counts 2–5, not that *the bank records* could lead to an improper verdict. Furthermore, the court has confidence that the jury is competent to parse the evidence and avoid confusion about which evidence is relevant to each count. Thus, the court declines to exclude the bank records pursuant to Federal Rule of Evidence 403.

Finally, the court is not persuaded by Fairbanks's argument that introduction of the bank records would deprive Fairbanks of his Sixth Amendment right to confrontation. Specifically, the Confrontation Clause bars "admission of *testimonial* statements." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (emphasis added). "Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.* (internal citation omitted). Fairbanks has not persuaded the court that the bank records are testimonial statements subject to the Confrontation Clause. Indeed, if, under certain circumstances, statements "made in the course of police interrogation" are considered nontestimonial, the court fails to understand how the bank records at issue could be considered testimonial. *See id.*; *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—

9

having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.").

Accordingly, the court denies Fairbanks's motion to exclude the bank records.

### III. Letters Attached to Correspondence Between Fairbanks and the Holloways

Fairbanks moves to exclude attachments to a letter that Fairbanks sent to the Holloways. Because the United States agrees that the attachments are likely more prejudicial than probative, it has removed them from the exhibit. Therefore, the court denies Fairbanks's motion as moot.

### IV. Uncharged Conduct

Fairbanks moves to exclude "evidence related to prior investment contracts and settlement agreements between Mr. Fairbanks and a Wendell Lunt and a Kathi Balsmeier," as well as "evidence related to federal tax liens filed against Mr. Fairbanks." ECF No. 78 at 2. Fairbanks asserts that the evidence should be excluded so that the United States does not "secure a conviction because the jury thinks Mr. Fairbanks is a bad guy." *Id.* The court addresses each piece of evidence in turn.

#### A. *Lunt Investment Contract*

Fairbanks argues that the Lunt investment contract is impermissible character evidence that should be excluded under Federal Rule of Evidence 404(b). Specifically, Fairbanks appears to assert that the Lunt investment contract cannot be admitted for a proper purpose because it "is far removed from the timeline of Mr. Fairbank[s]'s current charges. The Lunt evidence dates back to 2007 and involves a written real estate agreement that is materially different from the alleged investment contracts at issue in Counts 1 and 2 of the current case. Moreover, none of the entities and companies involved in the Lunt evidence are the same as those involved in the current charges." *Id.* at 4.

In contrast, the United States asserts that the Lunt investment contract is admissible because it "is directly connected to the factual circumstances of this crime" and, therefore, not governed by Federal Rule of Evidence 404(b). ECF No. 71 at 3. The United States further asserts that, even if the Lunt investment contract is subject to Rule 404(b), it is still admissible as evidence of Fairbanks's "knowledge, plan, and preparation" because it "is nearly identical to the Supply[L]ine investment listed in count 1 in the indictment" and when Fairbanks "did not perform on one of the prior investments, Mr. Fairbanks sent an excuse/apology letter not unlike the one he sent the Holloways in this case." *Id.* at 5.

As an initial matter, the court is not persuaded that the Lunt investment contract is intrinsic evidence to the charged offenses. The Tenth Circuit has held that "'[o]ther act evidence is intrinsic'—and thus not subject to Rule 404(b)—'when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.'" *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) (citation omitted). In other words, "intrinsic evidence is that which is 'directly connected to the factual circumstances of the crime and provides contextual or background information to the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense.'" *Id.* (citation omitted). Here, the court is not persuaded that the Lunt investment contract is directly connected to the factual circumstances of the alleged crime. It was entered into seven years before the charged conduct occurred, and it involved a different entity than the one that is at the center of the charged offenses. Furthermore, the United States has provided no explanation as to what specific statements Fairbanks made that would have no longer been misleading if Fairbanks had disclosed his prior transaction with Lunt. In short, the Lunt investment

11

contract regarding an investment separate and apart from the charged offenses is not intrinsic evidence.

Similarly, the court concludes that the Lunt investment contract is not admissible pursuant to Federal Rule of Evidence 404(b). Specifically, the United States provides no explanation as to how the Lunt investment contract—which involved a distinct entity and was executed over seven years before the charged conduct occurred—is evidence of Fairbanks's knowledge, plan, or preparation. Indeed, it strains credulity to suggest that Fairbanks entered into the contract with Lunt as preparation for the alleged SupplyLine fraud, seven years later. Therefore, because the United States has not persuaded the court that the Lunt investment contract is being offered for a proper purpose, the court concludes that it must be excluded.[3] *See* FED. R. EVID. 404(b).

B. *Balsmeier Settlement Agreement*

Fairbanks asserts that the Balsmeier settlement agreement should also be excluded because, "while little is known regarding the Balsmeier evidence, it is far removed in time from the charges in the instant case." ECF No. 78 at 4. The United States argues that the settlement agreement should be admissible because it is intrinsic evidence and, even if the court concludes that it is extrinsic to

---

[3] The United States cites *United States v. Bonnett*, 877 F.2d 1450, 1461 (10th Cir. 1989), for the proposition that a pattern of illegally obtaining funds may be evidence of the defendant's "knowledge and intent, and reduces the possibility that [the defendant's] activities stemmed from some innocent reason." ECF No. 71 at 5 (quoting *Bonnett*, 877 F.2d at 1461). However, the pattern of unlawful activity in *Bonnett* occurred over a period of time much shorter than seven years, such that the uncharged conduct was evidence of the defendant's knowledge and intent at the time that the charged conduct was committed. *See* 877 F.2d at 1460–61. Here, the United States has not sufficiently explained how the Lunt investment contract is evidence of Fairbanks's knowledge at the time of the charged conduct. Indeed, although the United States clearly intimates that Fairbanks defrauded Lunt in a fashion similar to how Fairbanks allegedly defrauded Dustin and the Holloways, the Lunt investment contract by itself does not establish that, and the court is not aware of any other evidence that establishes such a fraud.

the charged offenses, it "may be relevant to establishing that Mr. Fairbanks knew that these investment contracts were securities and had knowledge of the securities laws." ECF No. 71 at 5.

First, the court is not persuaded that the settlement agreement is intrinsic to the charged offenses. The United States has not explained how an investment, which apparently occurred five years before the charged conduct, is directly connected to the charged offenses. Moreover, the United States has not explained how disclosure of the settlement agreement or the fact that Fairbanks was being sued was necessary in order to make the statements that Fairbanks did make not misleading. Indeed, a settlement agreement would suggest that Fairbanks had resolved any outstanding obligation to Balsmeier.

In addition, at oral argument, the United States conceded that the settlement agreement did not contain any evidence that Fairbanks knew that the investment contracts were securities or that he had knowledge of the securities laws. Thus, there is no proper purpose for which the settlement agreement is being offered by the United States and, therefore, it must be excluded. *See* FED. R. EVID. 404(b).

C.     *Tax Liens*

Fairbanks further argues that the evidence of federal tax liens is inadmissible because it "is not connected in time or relevancy to the current charges" since the evidence "allegedly dates back to a notice Mr. Fairbanks received in 2009 regarding his 2006 and 2007 taxes." ECF No. 78 at 4. In contrast, the United States asserts that the federal tax liens are intrinsic evidence to the charged offenses because "these liens were active when Ms. Holloway invested in Fairbanks'[s] business." ECF No. 71 at 1–2. If, in fact, the liens were active at the time of Ms. Holloway's investments, the court agrees.

Specifically, unlike the Lunt investment contract and the Balsmeier settlement agreement, the federal tax liens suggest that Fairbanks had outstanding financial obligations that could impact the viability of SupplyLine. The United States has presented evidence that Fairbanks received notice of the federal tax liens in 2009 and that he did not satisfy his outstanding tax obligations until October 19, 2016, after both Dustin and the Holloways invested in SupplyLine. Accordingly, the court concludes that the evidence of the federal tax liens is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *See Irving*, 665 F.3d at 1212 (citation omitted). Therefore, the evidence of the federal tax liens is not subject to Rule 404(b) and is admissible.[4]

## CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS the United States's motion (ECF No. 61) and GRANTS IN PART and DENIES IN PART Fairbanks's motions (ECF Nos. 72, 78).

DATED August 18, 2022.

BY THE COURT

Jill N. Parrish

United States District Court Judge

---

[4] However, the court notes that the admissibility of the federal tax liens is dependent on the United States producing an official copy of the tax liens and evidence that they were not satisfied until after the Holloways invested. The court will not admit the tax liens if the only evidence of their authenticity is Ms. Holloway's testimony that she found them "while going through trash at Mr. Fairbanks'[s] place of business," which, to this point, is the only evidence of their authenticity that the United States has presented to the court. *See* ECF No. 71 at 2.