IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS FAIRBANKS,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL<br><br>Case No. 1:19-cr-00114-JNP<br><br>District Judge Jill N. Parrish |

Before the court is defendant Thomas Fairbanks's motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. The court DENIES the motion.

## BACKGROUND

Fairbanks promoted a business called SupplyLine. He told individuals that they could invest in SupplyLine and that the money would be used to grow local businesses. Investors would receive interest on their contributions to SupplyLine.

The government charged Fairbanks with two counts of securities fraud in relation to his promotion of the SupplyLine concept. Count 1 charged Fairbanks with fraudulently obtaining $5,500 from the Holloways. Count 2 charged Fairbanks with fraudulently obtaining $30,500 from Ms. Dustin. A trial was held on these charges. After the government rested and after the close of all evidence, Fairbanks moved for a judgment of acquittal under Rule 29(a) as to both counts. Fairbanks did not articulate any arguments for granting the motion at that time. The court reserved decision on the motion under Rule 29(b) and assured Fairbanks that he could make any arguments in favor of his motion either orally or in writing at a later time. The jury returned a guilty verdict on both Count 1 and Count 2.

Fairbanks informed the court that he wished to orally argue his motion for a judgment of acquittal. The court convened a hearing for that purpose. At the hearing, Fairbanks argued that the court should grant a verdict of acquittal as to Count 2 for two reasons.[1] First, he argued that there was no evidence of fraud in relation to the Count 2 transaction. Second, he argued that there was no evidence that any fraudulent activity was sufficiently connected to the offer or sale of a security.

## LEGAL STANDARD

Rule 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In considering a motion under Rule 29, the court "ask[s] only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000) (citation omitted). The court "must not weigh conflicting evidence or consider the credibility of the witnesses, but simply 'determine whether the evidence, if believed, would establish each element of the crime.'" *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (citation and alteration omitted). The court must "consider the collective inferences to be drawn from the evidence as a whole," "rather than examin[e] the evidence in 'bits and pieces.'" *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006) (citation and alterations omitted). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh

---

[1] Fairbanks stated that he was making a "general motion" for acquittal as to Count 1. But he did not explain why the evidence supporting the jury's verdict on this count was inadequate. Although the court may sua sponte consider whether the evidence supports a charge under Rule 29(a), the court declines to do so absent any argument from Fairbanks.

the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Vallo*, 238 F.3d at 1247 (citation omitted). When evaluating the sufficiency of the evidence supporting a conviction, courts "owe considerable deference to the jury's verdict." *United States v. Mullins*, 613 F.3d 1273, 1280 (10th Cir. 2010)

## ANALYSIS

In Count 2, the government charged Fairbanks with securities fraud under 15 U.S.C. § 77q(a). "Three basic elements comprise the offense: (1) fraud by any of the means identified in subsections (a)(1)-(3), (2) using any means or instruments of interstate commerce or the mails, and (3) occurring in the offer or sale of a security." *United States v. Harris*, 919 F. Supp. 2d 702, 705 (E.D. Va. 2013). Fairbanks argues that he is entitled to a verdict of acquittal for Count 2 because the government failed to prove two of these elements. First, he asserts that the government did not produce sufficient evidence of fraud. Second, he contends that that the government did not prove that any fraud was connected to the sale of a security.

**I.     FRAUD**

The three methods of committing fraud listed in 15 U.S.C. § 77q(a) are:

> (1) employ[ing] any device, scheme, or artifice to defraud, or
>
> (2) obtain[ing] money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) engag[ing] in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

"These provisions capture a wide range of conduct." *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1101 (2019) (analyzing both 15 U.S.C. § 77q(a) and 17 C.F.R. § 240.10b-5 (Rule 10b-5), which uses nearly identical language).

Because Ms. Dustin passed away before trial, she did not testify.[2] Thus, there was no evidence of any false statements that Fairbanks may have made to Ms. Dustin in relation to the money that was transferred from her to accounts controlled by Fairbanks. Fairbanks, therefore, argues that he is entitled to a judgment of acquittal because there was no evidence of any untrue statements to support a finding of fraud under subsection (2) of 15 U.S.C. § 77q(a). But evidence of a false or misleading statement is only one of three permissible methods of proving the fraud element of securities fraud. Here, there is evidence from which the jury could have reasonably concluded that Fairbanks's SupplyLine business operated as a fraud or deceit under subsection (3).

Mrs. Holloway testified that Fairbanks told her that a number of profitable businesses in the community participated in SupplyLine and that her and her husband's investment would be secured by collateral in those businesses. Fairbanks also told the Holloways that they could withdraw their investment whenever they wanted. Based on these representations, the Holloways invested $5,500. But when they attempted to contact Fairbanks to request the return of their money, he ignored their phone calls, emails, text messages, and hand-written notes for months. When the Holloways finally found Fairbanks at his business, he promised to return their money within two weeks. Fairbanks, however, did not return the money, and he again ignored the Holloways' attempts to contact him. Fairbanks told an investigator that rather than investing the Holloways'

---

[2] Moreover, Fairbanks presented evidence that Ms. Dustin did not believe that he had defrauded her.

money in local businesses, as he said he would, he used it to prepare an amicus brief in a criminal case. Fairbanks is not an attorney. He was unable to explain to the investigator how writing an amicus brief could generate profits.

The government also presented evidence that Ms. Dustin invested money in SupplyLine. Fairbanks admitted that he received $40,000 in cash from Ms. Dustin as an investment in SupplyLine. Fairbanks told investigators that he used the $40,000 cash payment to prop up his own failing business. The government also produced evidence of checks drawn from Ms. Dustin's funds totaling $58,700 with "Supply Line Partners" written in the memo line. As noted below, the jury could have inferred that these checks also constituted investments in the SupplyLine business model. When asked to provide records describing where this money went and how he or others was being compensated, Fairbanks stated that the records had been destroyed. An investigator also asked what happened to the money invested with SupplyLine. Fairbanks responded that the investors sabotaged their own investments. Fairbanks never returned any of Ms. Dustin's investment.[3]

This evidence supports a finding that Fairbanks's SupplyLine business scheme constituted a "course of business which operates . . . as a fraud or deceit upon the purchaser." *See* 15 U.S.C. § 77q(a)(3). First, the government presented evidence that Fairbanks operated SupplyLine as a fraud against the Holloways. Mrs. Holloway testified that Fairbanks promised to invest the Holloways' money in profitable local businesses and return the investment with interest whenever the Holloways asked to withdraw the money. Fairbanks, however, admitted to an investigator that

---

[3] The government presented evidence that some of the Ms. Dustin's investment went to a business called ERA Advantage Reality (ERA) as a loan. Several monthly payments were then made from ERA to businesses controlled by Fairbanks. But none of the money was returned to Ms. Dustin.

he diverted the money to himself as compensation for preparing an amicus brief in a criminal case. Fairbanks never paid back any of the Holloways' investment. Second, the government proffered evidence that Ms. Dustin invested money in the same SupplyLine scheme with a similar outcome. Ms. Dustin signed a SupplyLine contract that was almost identical to the contract signed by the Holloways. Fairbanks admitted that she invested $40,000 in cash to the scheme, which he used in his own business. Checks with "Supply Line Partners" written in the memo line totaling $58,700—including the $30,500 check at issue in Count 2—were also drawn from Ms. Dustin's funds. Fairbanks claimed that he did not have any records showing what happened to this money because they were destroyed. Fairbanks did not return any of the $98,700 that Ms. Dustin had invested in SupplyLine.

From this evidence, the jury could have reasonably concluded that Fairbanks operated SupplyLine as a fraudulent course of business to both directly and indirectly enrich himself at the expense of his investors. Accordingly, "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government," the jury could also have reasonably found beyond a reasonable doubt that the $30,500 check at issue in Count 2 constituted an investment in this fraudulent course of business. *See United States v. Hale*, 762 F.3d 1214, 1222 (10th Cir. 2014).

## II.     NEXUS TO THE SALE OF A SECURITY

In order to prove its case, the government was required to show that the fraud occurred in connection with the offer or sale of a security. 15 U.S.C. § 77q(a). Fairbanks argues that his Count 2 conviction may not stand because the government did not produce sufficient evidence to permit the jury to reasonably conclude that the $30,500 check was for the purchase of a security. The court disagrees.

The government entered into evidence a contract signed by Ms. Dustin entitled "SupplyLine Investment Partners Collaboration Agreement" dated May 29, 2014. The contract provided that Ms. Dustin would receive a six percent annual return on capital contributions to the SupplyLine collaboration. A Capital Contribution Schedule, which listed Ms. Dustin's initial $40,000 cash contribution, was incorporated into the contract. The Capital Contribution Schedule contained numerous additional blank spaces for additional contributions, and the language of the agreement contemplated the potential for "additional capital contributions" to SupplyLine. At trial, the government argued that this agreement constituted a "security" under 15 U.S.C. § 77q(a). The government also presented to the jury a copy of a $30,500 check drawn from funds belonging to Ms. Dustin dated December 22, 2015. The memo line to the check read: "Re: Supply Line Partners."

Fairbanks does not contest that the jury could have reasonably found that the SupplyLine contract constituted a security. Instead, he argues that a memo line on a check dated over 18 months after Mrs. Dustin signed the SupplyLine contract is not sufficient to prove that the funds drawn from her account were connected to the sale of a SupplyLine security. The court concludes, however, that the evidence produced at trial was sufficient to support Fairbanks's conviction. The SupplyLine agreement contemplated future contributions that would be governed by the terms of the contract. Moreover, the jury could have recognized that the memo line on a check is a common method of indicating the purpose of the funds drawn by the check. Accordingly, the jury could have reasonably concluded that the $30,500 check was for the purchase of a SupplyLine security.

## CONCLUSION

For the above-stated reasons the court DENIES Fairbanks's motion for a judgment of acquittal.

DATED December 19, 2022.

                              BY THE COURT

                              _____
                              Jill N. Parrish
                              United States District Court Judge